IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| J. WAYNE RAIFORD and B, T & R ENTERPRISES, LLC, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | CV 111-152 |
| NATIONAL HILLS EXCHANGE, LLC; SNELLVILLE CROSSING, LLC; RICHARD D. SWOPE; RONALD J. DeTHOMAS; JAMES S. TIMBERLAKE; THOMAS L. ABERNATHY; and STEVEN E. GAULTNEY, | * * * * * * * | |
| Defendants. | * | |

**O R D E R**

Presently pending before the Court is Plaintiff's motion for reconsideration. (Doc. no. 119.) For the reasons set forth below, this motion is **DENIED**.

**I. BACKGROUND**

On March 27, 2013, the Court granted in part and denied in part Defendants' motion for summary judgment. (Doc. no. 118.) A complete factual and procedural background can be found in that Order; it is too lengthy to recount here. (See id. at 1-30.) At issue here, the Court dismissed Plaintiffs' fraud claim with prejudice. (See id. at 64-71.) The Court determined that Defendants had an obligation to communicate material facts to Plaintiffs but failed to disclose material information about the Electrolux Lease to Plaintiffs. (Id. at 65-66.)

Nevertheless, the Court determined that Plaintiffs failed to show how Defendants' concealment of the Electrolux Lease *from Plaintiffs* proximately caused Plaintiffs' injury. (Id. at 66-69.) The proximate cause of Plaintiffs' loss, if any, was Defendants' sale of the Shopping Center at a price that did not generate a profit. (Id. at 66.) Even if Plaintiffs had known about the Electrolux Lease, they had no voting or management rights in NHX and thus no means to influence the decision to sell the Shopping Center at a certain price. (Id. at 66-67.) And even if Defendants caused damages by failing to perform their contractual obligations in good faith, actionable fraud cannot be premised on mere failure to perform a contract unless the promisor intended to breach at the time of contracting. (Id. at 68-69.) Moreover, any concealment *from Compass Bank* does not fit into any recognized exception to the general rule that actionable fraud must be based upon a misrepresentation *to the defrauded party*. (Id. at 70-71.) Plaintiffs now move the Court, pursuant to Federal Rule of Civil Procedure 54(b), to reconsider whether proximate causation exists in this case.[1]

---

[1] In their motion for reconsideration, Plaintiffs nominally challenge Section IV.C.1(b) ("proximate causation and actual damages") and Section IV.C.2 ("concealment from Compass Bank") of the Court's Order of March 27, 2013. (Doc. no. 119 at 1.) Plaintiffs, however, do not present any argument regarding the latter section. Consequently, the Court will not reconsider the latter section herein.

Additionally, in responding to the motion for reconsideration, Defendants contend that the fraud claim also fails because Defendants had no duty to disclose and Plaintiffs were not sufficiently diligent. The Court need not address those issues to resolve the current motion.

## II. DISCUSSION

### A. Legal Standard

"In considering a motion for reconsideration, a court must balance the need for finality and judicial economy against the need to render just decisions." <u>Collins v. Int'l Longshoremen's Ass'n Local 1423</u>, No 2:09-CV-093, 2013 WL 393096, at *1 (S.D. Ga. Jan. 30, 2013). District courts have discretion to reconsider interlocutory orders at any time prior to final judgment pursuant to Rule 54(b). <u>Watkins v. Capital City Bank</u>, No. 3:10-CV-087, 2012 WL 4372289, at *4 (S.D. Ga. Sept. 24, 2012); <u>Lambert v. Briggs & Stratton Corp.</u>, No. 6:04-CV-016, 2006 WL 156875, at *1 (S.D. Ga. Jan. 19, 2006).

Although the text of Rule 54(b) does not specify a standard to be used by courts in exercising authority under the Rule, courts in this Circuit "have taken the position that a motion for reconsideration should only be granted if there is (1) an intervening change in controlling law, (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice." <u>Insured Deposits Conduit, LLC v. Index Powered Fin. Servs., LLC</u>, Civ. No. 07-22735, 2008 WL 5691349, at *1-2 (S.D. Fla. Mar. 14, 2008); accord <u>Bryant v. Jones</u>, 696 F. Supp. 2d 1313, 1320 (N.D. Ga. 2010); <u>Merrett v. Liberty Mut. Ins. Co.</u>, No. 3:10-CV-1195, 2013 WL 5289095, at *1 (M.D. Fla. Sept. 19, 2013). The movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior

3

decision, for reconsideration is an extraordinary remedy to be employed sparingly. <u>Voter Verified, Inc. v. Election Sys. & Software, Inc.</u>, No. 6:09-CV-1969, 2011 WL 3862450, at *2 (M.D. Fla. Aug. 31, 2011). A motion for reconsideration should not be used to present arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented before the original decision. <u>S.E.C. v. Mannion</u>, No. 1:10-CV-3374, 2013 WL 5999657, at *2 (N.D. Ga. Nov. 12, 2013).

**B. Analysis**

Because Plaintiffs have alleged neither an intervening change in controlling law nor newly discovered evidence, the Court will assume Plaintiffs bring the instant motion because they believe that there is a need to correct clear error or prevent manifest injustice. In urging the Court to reconsider dismissal of the fraud claim for lack of proximate causation, Plaintiffs do not contend that they had any voting or management rights that would have allowed them to directly affect the sale of the Shopping Center at a profitable price. Instead, Plaintiffs argue that if they had known material information regarding the Electrolux Lease, they could have (1) entered the bidding to buy the Shopping Center, (2) urged Compass Bank to stop the sale, or (3) taken legal action to enjoin the sale. (Doc. no. 119 at 2.) The Court addresses each of these causation theories in turn.

First, the argument that Plaintiffs could have entered the bidding process to buy the Shopping Center themselves cannot be

4

considered because it was never raised in the original summary judgment briefing. See Mannion, 2013 WL 5999657, at *2. Moreover, Plaintiffs have pointed to no evidence showing that Plaintiffs were financially capable of purchasing the Shopping Center. Nor have they presented any evidence that they would have been willing or interested in purchasing the Shopping Center at that time. The record, in fact, strongly indicates the contrary. Even after Raiford learned of the Electrolux Lease and understood that the lease had a significant impact on the value of the Shopping Center, he indicated that he wanted to sell his 15% interest (as opposed to buying out the Defendants) and was unwilling to execute a joint and several guaranty of debt in connection with a proposed restructuring and refinancing of the project. (Doc. no. 48, Ex. 50.)

Second, the argument that Plaintiffs could have caused Compass Bank to stop the sale also was not raised prior to the Court's summary judgment Order. Additionally, Plaintiffs were not actual members of NHX[2] (which owned the Shopping Center) and were not guarantors or obligors on the promissory note held by Compass Bank. Therefore, Plaintiffs had no legal relationship with Compass Bank. It is speculative to surmise that Compass Bank would have reacted to or even acknowledged a third-party plea to halt the sale of the Shopping Center *and* would have consequently

---

[2] Plaintiffs only had a contractual equity interest in NHX that did not include voting or management rights.

5

forced a sale above the approximate profit threshold of $14.2 million.[3]

Third, Plaintiffs contend that they "could and would have taken legal steps to stop the sale as a violation of Defendants' fiduciary duty."[4] (Doc. no. 119 at 2.) This theory of causation is belied by the record. In January 2011, Raiford was informed that Defendants were moving closer toward a sale and refinance of the Shopping Center. (Brown Dep., Ex. 1 at 17.) He was advised that to be part of the new partnership, he would need to provide a financial statement and sign a joint and several guaranty. (Id.) Raiford responded that he would have his accountant send a financial statement, but he never actually did so. (Id. at 18.) Then, in March 2011, Raiford learned about the Electrolux Lease and was represented by counsel. (See Doc. no. 48, Ex. 50.) Raiford's counsel wrote to one of the individual Defendants: "It is our understanding that this space represents approximately one-half of the available space in the Shopping Center and has a significant impact on the value of the Shopping Center." (Id.) Therefore, by that time, Raiford knew that there was a looming sale and that the Electrolux Lease had added significant value to

---

[3] Moreover, the Court notes that Plaintiffs have not pointed to any record evidence suggesting that they knew who to contact at Compass Bank that would have had the authority to stop the sale of the Shopping Center. In fact, Defendants' correspondence with Plaintiffs never disclosed the applicable Compass Bank representative. (See Brown Dep., Ex. 1.) And even if Plaintiffs had known the Compass Bank representative, it is speculative that Plaintiffs would have assumed that the representative was not informed about the Electrolux Lease and needed to be notified.

[4] The Court's review of Plaintiffs' original summary judgment briefing revealed only a passing reference to this theory "to enjoin" Defendants' scheme. (See Doc. no. 80 at 17.)

6

the Shopping Center. Defendants failed to respond to his letter, yet he took no legal action at that time.

Although Raiford did not know exactly how valuable the Electrolux Lease was and did not know about Defendants' alleged scheme to sell the Shopping Center at an inadequate price, the record contradicts Plaintiffs' speculation that they would have been so proactive as to file suit to enjoin the sale if they knew more material information. Indeed, as explained in the Court's prior Order, by January 2012, Plaintiffs had all the material information about the Electrolux Lease *and* much more information about Defendants' role in the Short Sale and later repurchase of the Shopping Center. (See Doc. no. 118 at 34-35.) Yet, Plaintiffs did not amend the Complaint to add a claim for breach of fiduciary duty until May 2012. (Id. at 35.) There is little reason, if any, to conclude that Plaintiffs would have filed a breach of fiduciary duty action and moved for a temporary restraining order or preliminary injunction prior to the April 18, 2011 Short Sale if they had known more about the Electrolux Lease and the proposed Short Sale at that time.

Moreover, Plaintiffs' anticipated success in legally enjoining the sale is entirely speculative. Predicting the outcome of litigation is rarely certain, and Plaintiffs have not explained how they would have won such a suit. To succeed, Plaintiffs would have had the burden of persuasion to clearly establish entitlement to a preliminary injunction – an often

7

difficult task to achieve. At first blush, it appears that Plaintiffs would have had great difficulty establishing a substantial likelihood of success on the merits and an inadequate remedy at law. Here, the Court need not litigate a hypothetical lawsuit that Plaintiffs may never have filed. Plaintiffs' theory on causation is simply too speculative to warrant reconsideration of summary judgment. See O.C.G.A § 51-12-8 ("If the damage incurred by the plaintiff is only the imaginary or possible result of a tortious act or if other and contingent circumstances preponderate in causing the injury, such damage is too remote to be the basis of recovery against the wrongdoer.").

In summary, Plaintiff's motion for reconsideration fails to show a causal connection between Defendants' alleged fraud and Plaintiffs' injury. Plaintiffs certainly do not establish any clear error or manifest injustice imposed by the Court's prior ruling.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to reconsider (doc. no. 119) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 8th day of January, 2014.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA