IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

J. WAYNE RAIFORD and B, T & R      *
ENTERPRISES, LLC,                   *
                                    *
     Plaintiffs,                    *
                                    *
          v.                        *      CV 111-152
                                    *
NATIONAL HILLS EXCHANGE, LLC;       *
SNELLVILLE CROSSING, LLC;           *
RICHARD D. SWOPE; RONALD J.         *
DeTHOMAS; JAMES S. TIMBERLAKE;      *
THOMAS L. ABERNATHY; and            *
STEVEN E. GAULTNEY,                 *
                                    *
     Defendants.                    *

O R D E R

This matter is before the Court on RBS Consulting, LLC's ("RBS") Bill of Costs (Doc. 172) and Defendants' objections to that statement of costs (Doc. 173). On November 17, 2014, the Court held a hearing on Plaintiffs' Motion for Order to Show Cause (Doc. 163). In that motion, Plaintiffs asked the Court to make RBS, a computer forensics firm retained by Plaintiffs to conduct an audit that the Court authorized as a sanction against Defendants, appear and substantiate its billing records. (Doc. 136; see also Doc. 139.) RBS appeared at the hearing and, through counsel, consented to the Court's jurisdiction for the purpose of resolving the billing and discovery dispute. (FTR Recording System ("FTR") at 10:51:28 – 53:05, 3:21:12.)

After fully considering the parties' filings and oral arguments, including those presented by RBS, the Court found no evidence to suggest that the bills submitted by RBS for Phase I of the audit were unreasonable. (FTR at 3:21:51 – 24:35; 3:25:25 – 25:57.) Given the escalating costs of the audit and both parties' failure to exercise proper diligence at the commencement of this undertaking (id. at 3:17:45 – 19:22), the Court imposed several conditions on the payment of (1) outstanding invoices, (2) future invoices, and (3) RBS's costs associated with the November 17, 2014 hearing, including preparation time, expenses, and attorney's fees. (Doc. 171 at 2.) Specifically, as to the hearing costs and expenses, the Court ordered the parties to reimburse RBS in equal shares. (Id.)

RBS, through its attorney John C. Dabney, has submitted to the Court a request and supporting documentation for $39,485.56 in attorney's fees, witness fees, and expenses. (Doc. 172 at 1.) Defendants object to this figure on four grounds. First, Defendants contend that Mr. Dabney's rate of $400.00 per hour is excessive and must be reduced to the prevailing rate for this district. (Doc. 173 at 1.) Second, Defendants assert that the Court should disallow entirely the expenses submitted for Richard Pengelly, an RBS employee who traveled to testify at the hearing, because his appearance was "unnecessary and duplicative." (Id. at 2.) Third, Defendants assert that the need for the hearing in the

2

first place was precipitated *by RBS* when it "enter[ed] into an undefined contractual arrangement with the Plaintiff law firm" and submitted "sketchy and incomplete" records. (Id. at 2, 3.) They request that RBS's "costs should be reduced by an amount that the Court determines reflects the responsibility . . . of RBS." (Id. at 3.) Finally, Defendants argue that RBS "block billed" its time and improperly "rounded up to the total hour or half hour." (Id. at 3.) The Court will address Mr. Dabney's proposed expenses and RBS's proposed expenses separately.

## DISCUSSION

### A. Attorney's Fees

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (internal quotations omitted). In determining what is a "reasonable" hourly rate and what number of compensable hours is "reasonable," the court must consider the twelve factors[1] enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Id.

---

[1] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Bivins, 548 F.3d at 1350 n.2.

3

The product of these two figures is the "lodestar." Id. After calculating the lodestar, the Court may then consider whether it should be adjusted upwards or downwards. Norman v. Hous. Auth., 836 F.2d 1292, 1302 (11th Cir. 1988); Lambert v. Fulton Cnty., 151 F. Supp. 2d 1364, 1369 (N.D. Ga. 2000). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303. The Court should also be mindful that a request for attorney's fees "should not result in a second major litigation." Id.

### 1. *Reasonable Hourly Rate*

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299. The "going rate" in the community is the most critical factor in setting the fee rate. Martin v. Univ. of S. Ala., 911 F.2d 604, 610 (11th Cir. 1990). The relevant legal community is the district in which the court sits. Knight v. Alabama, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) (citing Turner v. Sec'y of Air Force, 944 F.2d 804, 808 (11th Cir. 1991)). Because the Court is itself considered an expert on hourly rates in the community, it may consult its own experience in forming an independent judgment. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).

Mr. Dabney seeks an hourly rate of $400.00 per hour, which Defendants contest as unreasonable. This Court has previously approved $250.00 per hour as a reasonable billing rate in the Augusta legal market. See Guzman v. Consumer Law Grp. et al., No. 1:11-cv-187, Doc. 91 (S.D. Ga. Nov. 6, 2012); Johnson v. YKK Am., Inc., No. 3:07-cv-048, Doc. 171 (S.D. Ga. Apr. 29, 2010); Ingram v. Kellogg's Sales Co., No. 1:09-cv-021, Doc. 39 (S.D. Ga. Feb. 24, 2010); Salazar v. Milton Ruben Chevrolet, Inc., No. 1:06-cv-195, Doc. 86 (S.D. Ga. Mar. 6, 2009). More recently, in recognizing that two years have passed since the Court assessed the above-mentioned cases, the Court approved $275.00 per hour as a reasonable billing rate. M.I.T., Inc. v. Medcare Express, N. Charleston, LLC et al., No. 1:14-cv-081, Doc. 12 (S.D. Ga. Oct. 14, 2014). Indeed, in *this* case, the Court limited Plaintiffs' counsel's recovery to $275.00 per hour when it issued sanctions. (See Doc. 166 at 4-5.) Upon consideration of the relevant legal market, the underlying discovery and billing dispute at issue, and Mr. Dabney's experience and expertise, the Court likewise sets his billing rate at $275.00 per hour.

2. *Hours Reasonably Expended*

When exercising proper "billing judgment," attorneys must exclude excessive, redundant, or otherwise unnecessary hours from fee applications. ACLU of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999). "[H]ours excluded are those that would be

5

unreasonable to bill a client" without reference to the skill, reputation, or experience of counsel. Norman, 836 F.2d at 1301. "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." Id. The decision to prune hours, if necessary, is squarely within the Court's discretion. Columbus Mills v. Freeland, 918 F.2d 1575, 1580 (11th Cir. 1990) (citing Norman, 936 F.2d at 1301).

Mr. Dabney submitted an itemized record of the time he attributed to the hearing on Plaintiffs' Motion for Order to Show Cause. (Doc. 172, Ex. D.) The first timesheet covers the period between October 8, 2014, the date on which Mr. Dabney held an "initial client conference" with RBS about preparing a demand letter with respect to the parties' outstanding audit bills, and November 3, 2014. (See id. at 1-2.) The second timesheet covers the period between November 5, 2014 and November 17, 2014, the date of the hearing. (See id. at 5-6.) Over the course of both periods, Mr. Dabney spent 40.3 hours:

- reviewing RBS's billing records, the body of corresponding e-mails between the parties with respect to the forensic audit, and the parties' filings with respect to the Motion for Order to Show Cause;

- conducting several telephone conferences with RBS, Plaintiffs' counsel, and Defendants' counsel about the instant billing dispute and the scope of work moving

6

> forward; compiling, revising, and publishing RBS's package of exhibits for the hearing; and
>
> - preparing the direct examination of Robert Bonenfant, RBS's principal.

Additionally, Mr. Dabney spent 9.4 hours traveling to and presenting testimony at the hearing. Neither party to this action has challenged the number of hours submitted by Mr. Dabney as unreasonable. The Court agrees, with one minor exception.

The Court finds it appropriate to subtract the two hours billed for Mr. Dabney's initial consultation with RBS on October 8, 2014 about preparing a demand letter. (Doc. 172, Ex. D, at 1.) Plaintiffs did not file their Motion for Order to Show Cause until October 20, 2014, and the time records indicate that Mr. Dabney did not become aware of it until a day later. The purpose of this fee award is to compensate Mr. Dabney for his involvement *in the hearing* and preparation therefor. Thus, any billable events that occurred between RBS and Mr. Dabney *before* Plaintiffs filed the precipitating motion — even if related — are not within the scope of compensable time contemplated by the Court.

That leaves **47.7 hours** of reasonably billed time at the rate of $275.00, for a total attorney's fee award of **$13,117.50**.

### 3. *Adjustment to or Enhancement of the Lodestar*

In responding to Defendants' objections, Mr. Dabney concedes that the highest hourly rate approved by this Court to date is $275.00 per hour. (Doc. 175 at 1.) Nevertheless, Mr. Dabney

7

urges the Court to make an upward adjustment or enhancement to the attorney's fee award that fully accounts for the difference between this district's prevailing rate and his customary $400.00 rate. (Id. at 2-3.) Specifically, Mr. Dabney points to (1) his 39 years of experience as a trial lawyer, (2) the complexity of the forensic analysis underlying the dispute, (3) the short notice on which Mr. Dabney was required to prepare such a complex topic, (4) the conflicting obligation that Mr. Dabney was required to set aside to meet this Court's and the parties' schedule, and (5) the "total vindication" of RBS's right to past due payments of roughly $71,000. (Id.)

The Supreme Court affirmed in <u>Pennsylvania v. Del. Valley Citizens, Council for Clean Air</u>, 478 U.S. 546, 565 (1986), that "upward adjustments of the lodestar figure are [ ] permissible . . . in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower court[]" that the lodestar fee would not have been "adequate to attract competent counsel." Id. at 565 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 898-901 (1984)); <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 554 (2010) (citation omitted). Such evidence is required because "the lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," and "enhancement may

8

not be awarded based on a factor that is subsumed in the lodestar calculation." Id. (internal citations omitted).

The Court in no way discounts Mr. Dabney's outstanding preparedness and demeanor, but the hearing at issue was not of the "rare" and "exceptional" breed that merits enhancement. See id. at 554-58 (stating superior attorney performance may justify an enhancement where (1) the method used in determining the reasonable hourly rate takes into account only a single factor or "only a few similar factors"; (2) the "attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted;" or (3) the "attorney's performance involves exceptional delay in the payment of fees," such as in civil rights cases invoking federal fee-shifting).

4. *Costs*

Mr. Dabney is also entitled to reimbursement for his expenses, provided that such expenses are reasonable. (Doc. 171 at 2 & n.1.) In this case, the Court finds Mr. Dabney's request of expenses for long distance telephone calls, postage,[2] and mileage reasonable in light of the fact that neither Mr. Dabney nor RBS are local. Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1192 (11th Cir. 1983). Mr. Dabney also will be reimbursed for expenses incurred in preparing to represent RBS in this Court,

---

[2] Consistent with the Court's reasoning above, it excludes the $13.47 postage charge for the demand letter sent by Mr. Dabney to Plaintiffs and Defendants on October 15, 2014. (Doc. 172, Ex. D, at 2.)

9

such as admission fees, certification fees, and the cost of photocopying and binding exhibits. Id.; see also Burke By & Through Burke v. Keenum, No. CV 288-067, 1989 WL 14681, at *8 (S.D. Ga. Feb. 21, 1989). Accordingly, the Court finds Mr. Dabney's total allowable expenses in this case are $557.07.

B. **RBS's Expenses**

1. *Preparation & Hearing*

Defendants object to the submission of $10,475 in "preparation fees" for this matter by Mr. Bonenfant and J.D. Roe because they believe RBS bears some responsibility in bringing about this dispute and, in any case, the substantiating documentation is imprecise. (Doc. 172 at 2-3.) The Court will not entertain Defendants' finger pointing: it is Defendants' own discovery misconduct that precipitated the need for the forensic audit in the first place, and it is Defendants' own failure to communicate about the scope of an audit for which they would be financially responsible that in part created the dispute here. Nor will the Court permit Defendants' to re-litigate its finding that RBS's billing was reasonable. Defendants and Plaintiffs alike had the opportunity to examine and cross-examine RBS's representatives at the hearing about the substantive work completed *and* the time cards and other records used to support the invoices. Nevertheless, after careful comparison of Mr. Bonenfant's (Doc. 172, Ex. A) and Mr. Roe's (Doc. 172, Ex. B)

10

itemized time records with those of Mr. Dabney, the Court does take issue with certain hours billed in preparation and will deduct them accordingly.

### i. *Robert Bonenfant*

First, as with Mr. Dabney, the Court will deduct any billable events related to nonpayment and collection that occurred *before* Plaintiffs filed the precipitating motion. (Doc. 172, Ex. A (9/27, 10/3, and 10/8/14 entries).) Second, the Court finds Mr. Bonenfant's entries for "exchanging" e-mails or "reviewing and responding" to e-mails on November 2 and November 6, 2014 to be duplicative of entries for the same on November 1 and November 5, 2014. Lastly, the Court will deduct the three hours billed by Mr. Bonenfant on November 16, 2014 for a meeting he purportedly held with Mr. Dabney "to discuss the case [and] review all the material." (Doc. 172, Ex. A.) Mr. Dabney did not bill for this time, and thus to the extent the Court can discern, the meeting may have occurred over dinner. (See Doc. 172, Ex. C (entry reflecting dinner expenses for Mr. Pengelly, Mr. Bonenfant, and Mr. Dabney).) That leaves **21.4 hours** of reasonably billed preparation time by Mr. Bonenfant at the rate of $250.00, plus **4 hours**[3] for his court appearance, for a total expense award of $6,350.00.

---

[3] The Court notes that Mr. Dabney billed only 4 hours for his appearance at the hearing (Doc. 172-4 at 2) while Mr. Bonenfant and Mr. Pengelly submitted 4.5

11

ii. *J.D. Roe*

First, as with Mr. Dabney and Mr. Bonenfant, the Court will deduct any billable events related to nonpayment and collection that occurred *before* Plaintiffs filed the precipitating motion. (Doc. 172, Ex. B (9/27, 10/3, and 10/8/14 entries).) The Court also will also reduce Mr. Roe's hours for the time he spent delivering two retainer payments to Mr. Dabney's office. (Id. (10/21 and 10/28/14 entries).) RBS does not provide any reason why a stamp or some type of electronic funds transfer would not have sufficed for delivery of payment. This type of work is clerical in nature and generally is not separately compensable. See Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002); Fulford v. NCO Fin. Sys., Inc., No. 6:07-cv-1196, 2008 WL 2952859, at *8 (M.D. Fla. July 30, 2008). That leaves **7 hours** of reasonably billed preparation time by Mr. Roe at the rate of **$250.00**, for a total expense award of **$1,750.00**.

2. *Richard Pengelly's Court Appearance*

Defendants object to the payment of travel expenses and courtroom fees for Mr. Pengelly because they believe his "short testimony" was "unnecessary and duplicative of the testimony by [Mr. Bonenfant]." (Doc. 172 at 2.) Mr. Dabney responds that the

---

hours each as a witness fee (Doc. 172-5). The Court finds 4 hours to be appropriate for all parties and will discount Mr. Bonenfant's and Mr. Pengelly's time accordingly.

affidavit filed by Defendant Ronald J. DeThomas (Doc. 165-1) in response to Plaintiffs' Motion for Order to Show Cause dictated that Mr. Pengelly should attend. (Doc. 175 at 3.) That Mr. Pengelly's testimony ultimately was limited to one brief issue without objection could not have been foreseen. (Id. at 3-4.) The Court again agrees.

Mr. DeThomas's affidavit set forth his own calculation of the number of hours RBS spent on the premises conducting Phase I of the audit. (Id. ¶ 2.) He also averred that RBS's conversation with Defendants about "per device" billing never resulted in a formal agreement. (See id. ¶¶ 3, 5.) Mr. Pengelly's role during Phase I of the audit was to receive hard drives as they were extracted from individual work stations, process them, maintain a log, and take photographs at the point RBS left the premises for site security. (FTR at 2:49:10-27; Doc. 175 at 3-4.) Each of these activities played a role in substantiating RBS's invoices on either the "per device" or hourly billing basis. During his "monitoring" process, Mr. Pengelly also was party to a conversation between Mr. DeThomas and Mr. Bonenfant about potential cost-saving measures (FTR at 2:50:18 — 51:04), and Mr. Bonenfant later pulled Mr. Pengelly into a meeting with several defendants about the billing method (id. at 2:51:11—50).

Mr. Pengelly had critical firsthand knowledge of several contested issues. His testimony at the hearing was a counterpoint

13

to the version of events elicited from Mr. DeThomas, as well as Defendants Richard Swope and James Timberlake. Accordingly, the Court finds all Mr. Pengelly's expenses are allowable, in this case **$3,915.20** (Doc. 172, Exs. C & D).[4]

### 3. *Other Travel*

The Court finds Mr. Bonenfant's travel time, airfare, gas, hotel, and meal expenses are reasonable, as are the rental car, gas, and hotel expenses RBS appears to have paid on behalf of Mr. Dabney. (See Doc. 172, Ex. C.) In the face of no further objections, the remaining costs of travel are approved in the amount of **$3,394.82**.

### CONCLUSION

Pursuant to the Court's November 19, 2014 Order (Doc. 171), the Court hereby **AWARDS** to RBS Consulting, LLC, through their attorney John C. Dabney, the sum of **$29,084.59** in costs, to be paid in equal shares by Plaintiffs and Defendants within **FOURTEEN DAYS** of the date of this Order.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of January, 2015.

*[signature]*
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

4  See *supra* note 3.

14