IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| J. WAYNE RAIFORD and | ) | |
| B, T & R ENTERPRISES, LLC | ) | |
|     Plaintiffs, | ) | |
| | ) | Civil Action No. 1:11-CV-00152 |
| v. | ) | |
| | ) | |
| NATIONAL HILLS EXCHANGE, LLC, | ) | |
| SNELLVILLE CROSSING, LLC, | ) | |
| RICHARD D. SWOPE, RONALD J. | ) | |
| DeTHOMAS, JAMES S. TIMBERLAKE, | ) | |
| THOMAS L. ABERNATHY, and | ) | |
| STEVEN E. GAULTNEY, | ) | |
|     Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' MOTION IN LIMINE**

Defendants seek to exclude twelve categories of evidence and argument. In most cases, to grant Defendants' motion would require the Court to reverse rulings it has already made in this case, most notably in its Order of March 27, 2013 ("Summary Judgment Order", Docket Item 118). Defendants simply wish to exclude all evidence that does not conform to their theory of the case. The device of the motion in limine is not intended to be a vehicle for the re-argument of a summary judgment theory previously rejected by the Court.

Defendants are wrong in saying that the only remaining issues in this case are "whether any Defendant (1) caused the forced sale [to their fraudulently concealed straw man, which was in fact a sale to themselves] to have to take place; and (2) whether any Defendant committed an act or omission that caused the forced sale to be below the $16 million figure that would have produced a profit." This incorrect theory is the sole basis of Sections 2-8 and 10-12 of their motion/brief. In the interest of clarity, Plaintiffs will

1

address each of Defendants' 12 categories in the order used by Defendants, even though this will involve a degree of duplication, but will first comment on Defendants' restricted theory of the issues in the case.

<u>What remains at issue in this case</u>

The evidence in this case, once it has finally been unearthed despite Defendants' lengthy and repeated efforts to hide it, shows that the purported sale of National Hills Shopping Center on April 22, 2011, was not a bona fide sale, but was instead simply a transfer of record title to the shopping center by Defendants (who have never at any time relinquished possession or control of the shopping center) acting for National Hills Exchange, LLC, to themselves acting through their straw man, Richard Harrell and his company, NHEP.  The issues remaining to be determined in this case are (1) whether Richard Harrell, in supposedly buying the shopping center on April 22, 2011, through NHEP, LLC, and then 56 days later conveying all the membership interests of NHEP, LLC to Defendants, was in fact acting, not as a bona fide purchaser but merely as an undisclosed agent for Defendants, (2) whether Defendants have shown that if the property had been sold in a bona fide transaction, as a result of bona fide marketing, no value would have been realized from the sale for the owners of National Hills Exchange, LLC, (3) what damages have been suffered by Plaintiffs as a result of Defendants' sale of the property to themselves, and (4) what equitable relief should be awarded to Plaintiffs.  The last issue is for the Court to determine, not the jury.  In respect of this last issue, Plaintiffs respectfully refer to their Item 18 Pre-Trial Brief (Docket Item 250), Section 2.  As to the others, it is immaterial whether Compass Bank insisted on either a foreclosure sale or what Defendants choose to call a "forced sale", because Defendants did neither.  Instead of a sale based on

a bona fide marketing effort, as required by Compass Bank, Defendants instead sold to themselves at a bogus price (which they had arranged by fraud on Compass Bank's appraiser), and as to which Defendants provided Compass Bank with sham evidence of a purported, but in fact woefully inadequate, marketing effort.  Whether Defendants caused *a* short sale is not the issue:  the issue is whether the sale that Defendants carried out in purported response to Compass Bank's demands was in fact a bona fide sale at a bona fide price to an unrelated third party.

1.  Litigation conduct during the lawsuit

Defendants make the extraordinary claim that all evidence of and comment on their conduct during the course of this litigation should be excluded from the trial. They make four arguments, all of which are without merit.  First, they claim that all their actions in litigation are irrelevant because their actions had no "influence on the forced price sale" or the "price produced by the forced sale".  This argument is beside the point because it is based on Defendants' erroneous contention regarding the issues left in this case.  Second, they claim that the Georgia law presumption for which Plaintiffs contend is not applicable because (a) Georgia law has changed (which it has not) or (b) Federal Rule of Evidence 302 does not apply to a presumption such as this one (which is likewise untrue).  Third, they claim that Judge Wood's order in *Candy Craft Creations, LLC v. Gardner*, 2015 WL 7738069 (December 1, 2015) requires such exclusion.  This is untrue.  Finally, they assert that two cases which they cite require such exclusion, which is again incorrect.

In order properly to address Defendants' extraordinary claim for the exclusion of all evidence of their litigation misconduct, it is necessary to recall  Defendants' blatant and consistent pattern of discovery fraud, which amounts to a willful and continuous subversion

of the litigation process. [1]  Space prevents a complete recitation, but Plaintiffs respectfully refer to Plaintiffs' brief in support of motion for sanctions (Docket Item 129-2), with exhibits, which covers much of this course of conduct, in some detail.  The most egregious instances of this were brought to the attention of the Court in 2014, when proof of Defendants' bad faith misconduct was fortuitously discovered by Plaintiffs through the "companion" lawsuit of *Brown v. Abernathy* in the Superior Court of Gwinnett County. This resulted in the Court's extraordinary sanctions, Docket Item 139, May 15, 2014 ("Sanctions Order"), referencing also the transcript of the hearing, Docket Item 140, imposed against Defendants, including fines against the individual Defendants personally and  the forensic search, at great expense, of Defendants' personal computers. These sanctions, designed to punish, deter and redress Defendants' misconduct, included the Court's statement that it would give an adverse inference instruction against Defendants at trial.

The  forensic search authorized by the Court uncovered even more egregious evidence of Defendants' bad faith, calculated suppression of evidence, because some evidence, of the very highest and most direct kind, which Defendants deleted from their personal computers was fortuitously preserved on Defendant Gaultney's computer alone, though it should have been on all Defendants' computers.  Defendant Gaultney's computer was kept at a different location from the other Defendants' computers and thus was not "cleansed" of damaging evidence, as it is evident Defendants caused their other computers to be.  Plaintiffs discussed this new evidence in their motion for reconsideration filed April

---

[1] In over 38 years of practice, the undersigned has never seen such a persistent and outrageous course of discovery abuse.

4

30, 2015, Docket Item 187-1, pp. 3-4, with exhibits, to which Plaintiffs respectfully and specifically refer.  Although the Court once again rejected Plaintiffs' plea to be allowed to add their claim for legal damages for breach of fiduciary duty, this does not affect the fact that the forensic search has uncovered this further and indefensible discovery misconduct, consisting of complete suppression of the most probative evidence imaginable as to Defendants' illegal scheme.   This suppression was carried out by the removal from Defendants' personal computers (as the forensic search has shown) of an email exchange in which they frankly avow their scheme and describe it.  Also in their motion for reconsideration, Plaintiffs pointed to Defendants' misconduct in furnishing Plaintiffs (and the Court) with a document purporting to be the operating agreement of National Hills Exchange, LLC, but which was actually only an unadopted draft, while concealing the true original operating agreement of the company. [2]

Now, Defendants assert on a blanket basis that their misconduct (including presumably even their repeated lies in successive responses to interrogatories, concerning their ties to Harrell) must be entirely excluded from evidence in this case, because it is supposedly irrelevant and prejudicial.  This argument is wrong on both the facts and the law.  The courts are not so helpless to punish and prevent such behavior, nor are they powerless to redress the balance disturbed by Defendants' actions, so as to allow Plaintiffs a truly fair trial.[3]  The suppression of which Defendants are guilty is highly relevant, and while it is prejudicial, this is a prejudice of Defendants' own making.

---

[2] See the Court's Order of May 17, 2016, pp. 8-9 and footnote 3.

[3] Admittedly, Defendants' bad faith makes it clear that they likely have destroyed or concealed any amount of additional evidence that would have aided Plaintiffs, but Plaintiffs have no way to remedy that disadvantage they must suffer.  To prove that Defendants have suppressed evidence that Plaintiffs have not fortuitously discovered

Notwithstanding these wrongs that have been inflicted on Plaintiffs, this Court does have the power to redress the balance of fairness to some extent and to punish Defendants for their cynical manipulation of the rules of the Court.  Without an adverse inference instruction, such as this Court indicated more than two years ago that it would give, the sanctions it has imposed against Defendants are mere slaps on the wrist:  a token monetary fine and an opportunity for Plaintiffs to fight to find, if they can, some portion of whatever Defendants may have concealed.  This would be  far from a full and adequate response to Defendants' misconduct.

*1.  Plaintiffs are wrong in contending that the presumption created by O.C.G.A. Section 24-14-22 is inapplicable.*

In the first place, the admissibility of discovery misconduct in a case such as this, and the jury instruction to which Plaintiffs will be entitled, is controlled by existing Georgia law and Rule 302 of the Federal Rules of Evidence.  As Plaintiffs have previously argued (Plaintiffs' Pretrial Memorandum regarding Item 18 of the Proposed Pretrial Order (Docket # 250), Section 6, pp. 6-13,  Georgia law as established by *Uniroyal Goodrich Tire Co. v. Ford,*  218 Ga.App. 248 (1995), *affirmed in part, reversed in part on other grounds* 267 Ga. 226 (1996),  provides that a party is entitled to show through evidence that an opposing party has attempted, although ultimately unsuccessfully, to hide evidence, and that such an attempt gives rise to a presumption that  the innocent party's claims were "well founded".  Here is the ruling of the Court of Appeals:

> The Fords contend that evidence that they were forced to subpoena documents which UGTC should have relinquished under the notice to produce, but initially claimed were lost

_____

elsewhere, as would seem likely from a consideration of their conduct, is clearly impossible by the very reason of their scheme's success.

or destroyed, was properly admitted because the jury was authorized to take an adverse inference from UGTC's actions.  The Fords contend that this evidence was not accompanied by any argument regarding UGTC's resistance to discovery.

O.C.G.A. Section 24-4-22 states that when a party fails to produce evidence, a rebuttable presumption arises that the charge against the party is well founded.  Because UGTC failed to produce evidence as required under the notice to produce, it was not improper to allow the jury to make an adverse inference from UGTC's apparently initial attempt to hide evidence or avoid discovery.

-- 218 Ga.App. at 261

Defendants contend that this presumption of Georgia law cannot be applied in this case, because the statute upon which it was based, O.C.G.A. Section 24-4-22, was replaced by a more restricted presumption as part of the enactment of the new Georgia Evidence Code, effective January 1, 2013.  This is false.  There is no  difference between the wording of the former statute and the wording of the current statute:

O.C.G.A. Section 24-4-22 (as it existed in 1995, at the time of  *Uniroyal v. Ford, supra*):
"If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted."

O.C.G.A. Section 24-14-22 (the current statute, which Defendants claim "replaced" Section 24-4-22):
"If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted."

7

The wording of the "replacement" statute (except for the "non-sexist" addition of the words "or she" and "or her") is identical with that the statute supposedly "replaced".

Admittedly, the language of the statute would seem to refer only to exculpatory evidence, as claimed by Defendants, but such a reading would make no sense. A party would be punished by a presumption if he failed to produce exculpatory evidence, but not if he failed to produce inculpatory evidence. However, the courts of Georgia, by whose rulings in this particular regard this Court would be bound, do not interpret the statute in such a restrictive way, but instead make the presumption applicable in the case of failure to produce evidence, whether inculpatory or exculpatory. In *Uniroyal v. Ford, supra,* upon which Plaintiffs rely, the presumption and the introduction of evidence to support the presumption were upheld with reference to inculpatory evidence.

Because the wording of the supposed "replacement" statute is identical with that of the statute supposedly replaced, the "change" in law is no change at all and cannot be used as Defendants have attempted to do. The law of Georgia is and continues to be as stated in *Uniroyal v. Ford, supra*: the attempt to hide evidence in discovery, whether successful or not, and whether the evidence involved is exculpatory of the one who attempts to hide it or inculpatory of him, can be shown by evidence and gives rise to the rebuttable presumption that the charges against the party guilty of attempting to hide it are well founded. This entirely disposes of the first of what Defendants call "two problems" with Plaintiffs' contention. [4]

---

[4] See also Section 101 of Ga. Laws 2011 Act 52 (uncodified): "Unless displaced by the particular provisions of this Act, the General Assembly intends that the substantive law of evidence in Georgia as it existed on December 31, 2012, be retained."

If the presumption for which Plaintiffs contend comes within the meaning of Rule 302 of the Federal Rules of Evidence, Plaintiffs are entitled to it in this case and are entitled to introduce the evidence necessary to support it.   See again Plaintiffs' Item 18 Memorandum, Docket Item 250, Section 6.   Defendants' second argument, that this is not the kind of presumption for which Rule 302 was intended, is also wrong as matter of law and policy.

Although much scholarly ink has been consumed in trying to explain it away or refine it in some way or other, Federal Rule of Civil Procedure 302 is succinct and unambiguous:  "In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision."  Since Georgia has created a presumption as to the merits of a claim, arising from the attempt of the party against whom the claim is made to hide evidence relevant to the claim, this would seem to be a textbook case in which state law would control the effect of the presumption.

In this case the evidence that Defendants have attempted to hide, by a pattern of bad faith disregard of their discovery obligations, the most basic and probative evidence conceivable as to Plaintiffs' claim that they bought National Hills Shopping Center through a fraudulent transaction in which their straw man acquired it for a fraction of its real value. Defendants repeatedly lied under oath as to what connections they had with their straw man.  They failed to produce  documents clearly within Plaintiffs' requests for production, which showed that  they themselves had loaned their straw man part of the money he used to purchase the property and that when he acquired the property his financing bank insisted on a "put agreement" which in effect made the Defendants the real borrowers of the remainder of the purchase money, rather than their straw man.  As this Court found after

an evidentiary hearing, Defendants further intentionally and in bad faith suppressed emails between themselves and their supposed market agent, Bullock Mannelly Partners, on this very same subject.  Finally, the forensic search ordered by this Court as a partial remedy for Defendants' suppression of evidence, actually resulted in the discovery of an email from Defendants specifically admitting that they always intended to repurchase the property from their straw man, long before the sale to him ever occurred and long before the date that they contended in their depositions they decided to re-acquire the property.  The materiality of the documents deliberately withheld by Defendants requires no further argument.

Against all this, Defendants contend, relying entirely on the Advisory Committee notes that accompany the rule, that Rule 302 was not intended to apply to state law presumptions such as that provided by O.C.G.A. Section 24-14-22, because this presumption is only "tactical" rather than "substantive".

Defendants provide no meaningful argument to distinguish between a "substantive" privilege and a merely "tactical" one.    This is not surprising, given that "[e]ven the Reporter [for the Advisory Committee] conceded that no court ever drew the distinction between "tactical" presumptions and "substantive" presumptions."  21B Federal Practice and Procedure Evidence Section 5134 (2d ed.).

Reverting to the rule, we see easily that the Georgia presumption is "regarding a claim or defense for which state law supplies the rule of decision".  It is also clear that Rule 302 intends to preserve and safeguard state presumptions  that are within its purview, and not only state presumptions  *per* se, but also "the effect of" a state presumption.  As Plaintiffs noted in their above referenced "Item 18 Memorandum," (Docket Item 250),  the

authors of Federal Practice and Procedure note that this includes the "effect" of making evidence admissible.  It would clearly be absurd to preserve a state presumption but to exclude the very evidence which would support the presumption.

As shown above, it  is not  clear what the Advisory Committee meant when it said that "the rule does not apply state law when the presumption operates upon a lesser aspect of the case [lesser than "a substantive element"], i.e., "tactical" presumptions."  The Advisory Committee cited several instances of a presumption operating on a supposedly "substantive" element of a claim, but cited none that would illustrate what it meant when it said that there are presumptions that operate upon a "lesser aspect of the case".  So far as Plaintiffs have been able to find, there exists no satisfactory scholarly commentary explaining or attempting to explain what  the quoted language from the Advisory Committee Notes means.  Since Defendants cite none,  Plaintiffs presume that they also were unable to find any.

In such circumstances, faced with an apparently unambiguous rule that squarely covers Plaintiffs' desired presumption, it would be rash indeed for this Court to frustrate the evident intent of the rule by creating definitions for presumptions that "have to do" with a "substantive element of the claim or defense", and for other presumptions that are merely "tactical".    The Advisory Committee Notes have no official standing and cannot  be regarded as authoritative guides to the intent and meaning of the Federal Rules of Evidence. Directly pertinent is the discussion provided by  the treatise Federal Practice and Procedure, Federal Rules of Evidence:

> The Advisory Committee's Note to Rule 302 argues that Erie does not require adherence to all state presumptions in diversity cases.  The drafters claim federal courts must follow state law only where the presumption "operates upon"

an element of a claim or defense.  Erie supposedly allows federal courts to ignore what the Reporter calls "tactical presumptions".  According to the Note the phrase in Rule 302 "presumption respecting a fact which is an element of a claim or defense" incorporates this "imprecise" distinction into the Rule.  Since evidence scholars find the phrase "unclear", we may doubt that Congress meant to adopt this reading of the language when it enacted the Rule without altering this part of it.

Even the Reporter conceded that no court ever drew the distinction between "tactical" presumptions and "substantive" presumptions" . . . The Advisory Committee Note points out that in all of those cases "the burden of proof question has to do with a substantive element of the claim or defense."  The reader will grasp at once what the Advisory Committee apparently did not--the complete circularity of this reasoning . . .

A "tactical presumption" does not seem any less outcome-determinative than one that operates directly on an element of a claim or defense.  Moreover, because the concept of "tactical presumption" is so vague, it invites manipulation by courts and counsel to frustrate disagreeable state policy.  Since the Advisory Committee suggests no federal policy beyond its own distaste for state law . . . courts would do better by reading Rule 302 literally.

> --21B Federal Practice & Procedure,
> Section 5134 (footnotes omitted).

Plaintiffs respectfully draw the Court's attention to the entire section.  Plaintiffs submit that the treatise's reasoning effectively disposes of Defendants' somewhat offhand and question-begging argument.  There is simply no reason not to apply the state law presumption created by O.C.G.A. Section 24-14-22 and Georgia case law.  This in itself is sufficient to justify denial of Defendants' motion for a blanket exclusion of any reference to or evidence of their discovery misconduct from the trial of this case.

2.  *Candy Craft Creations, LLC v. Greg Gartner*

Even, however, if the Georgia presumption were not applicable under Rule 302, neither the case of *Candy Craft Creations, LLC v. Greg Gartner,* 2015 WL7738069 (Dec. 1, 2015), nor other federal law or practice, would bar introduction into evidence of the particular discovery misconduct which has occurred in this case.  (In *Candy Craft,* Judge Wood made no reference to Rule 302 or to the decision of the Georgia Court of Appeals in *Uniroyal Goodrich Tire Co. v. Ford, supra.*  So far as Plaintiffs have been able to determine, this authority was not called to the attention of Magistrate Judge Baker or Judge Wood in the *Candy Craft* case.)   Defendants greatly overstate the significance of *Candy Craft,* wherein Judge Wood, applying Rule 403 of the Federal Rules of Evidence, ruled that, under the circumstances of that case, the jury should not be told about a defendants' discovery misconduct which had resulted in a monetary sanction against defendants.  The basic distinction is that, according to long established evidentiary principles, in the present case Defendants' actions are highly probative evidence of their fraudulent intent in the underlying scheme with which they are charged, whereas in *Candy Craft* the defendants' actions were not significantly probative of the ultimate issues of trademark infringement.

*Candy Craft* was not a case alleging fraud, but rather one of trademark infringement. [5]   The plaintiff had argued that the defendant's actions in concealing

---

[5] :  Other orders in the case available through Westlaw indicate that at some point during this case there was an issue of common law fraud (possibly involving matters not related to the emails suppressed by defendant), but examination of Judge Wood's opinion above cited and of the underlying opinion of Magistrate Judge Baker, 2015 WL 6391202, shows that the only substantive claims for relevance of defendants' misconduct which were considered by either Magistrate Judge Banker or Judge Wood in the context of the motion to exclude were those related to the trade secrets claim and the plaintiffs' claim for attorneys' fees.

documents in litigation "tend[ed] to show that they [had] obtained Plaintiff's trade secrets improperly and dealt with Plaintiff in bad faith prior to the litigation." 2015 WL 7738069, *2. Judge Wood found that the Magistrate Judge "correctly determined that evidence of Defendants' discovery misconduct and pending sanctions should be excluded from Plaintiff's case in chief under Rule 403" because "Defendants' actions--while perhaps indicative of their knowledge and intent during the discovery period--would be only slightly probative of their state of mind when the events giving rise to this action occurred." *Id.,* citing to page 15 of Magistrate Judge Baker's Order (p. 7 as reported by Westlaw at 2015 WL 6391202) and to page 20 and Note 3 of his Order (relating to evidence of bad faith for Georgia statutory attorneys' fees purposes and therefore not relevant here). It is also important to note, as Plaintiffs did in their Pre-Trial Item 18 Memorandum, Docket Item 250, p. 10, that Magistrate Judge Baker, in deciding that the admitted probative value of evidence of the defendant's misconduct was "diluted" because there was evidence that it was attributable to their counsel at least to some extent to the misconduct of their prior counsel, not to the defendant's itself. 2015 WL 6391202, *7. There is no such evidence here, or any reason to believe that Defendants' counsel were party to their misconduct. On the other hand, in this case Defendants acted to withhold evidence on the central factual issue in this case, which is whether Richard Harrell acted as their straw man in purportedly buying National Hills Shopping Center.

Defendants cite nothing, other than Magistrate Judge Baker's order, to show that a federal court should not allow such evidence as a matter of federal law, even without considering the Georgia presumption. Judge Wood, in upholding Magistrate Judge Baker's order, relied solely on Rule 403 of the Federal Rules of Evidence, allowing the

court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *Candy Craft Creations, LLC v. Gartner,* 2015 WL 7738069, *2 (Order of December 1, 2015). Plaintiffs submit that in this case, given the character of the suppression of evidence in which Defendants have engaged, the probative value of evidence of that suppression is such as clearly to outweigh any prejudice to Defendants. In *Candy Craft, supra,* Magistrate Judge Baker found that the probative value of the evidence of discovery misconduct was "at least diluted by the involvement of their past counsel". He also found that "much of [the suppressed] evidence . . . would be far removed from the substance of Plaintiff's claims." There is no evidence in the present case that Defendants' counsel had anything to do with Defendants' decision to withhold critical evidence. Indeed, given the character and standing of Defendants' counsel, Plaintiffs are certain that there was no such involvement by counsel. Furthermore, the documents withheld do not relate to matters "far removed" from the substance of Plaintiffs' claims. To cite only the most glaring example, it was only through a forensic examination of Defendants' personal computers that Plaintiffs discovered the emails of March 21-22, 2011, wherein Defendant Gaultney expressly avowed to Defendants' accountant, copied to all Defendants, the very intention that Defendants have vehemently denied in their testimony. This evidence is spectacularly probative in itself, and Defendants' studied and deliberate action in suppressing it is extremely clear evidence of their consciousness of guilt. It is notable that this document, which should have appeared in any bona fide search of the personal computers of the five Defendants, was only located on that of the one Defendant who does not share office space with the others.

The Eleventh Circuit Court of Appeals has noted that "because [Rule 403] permits the exclusion of relevant evidence only when its probative value is substantially outweighed by the potential for undue harm, the rule favors admissibility of relevant evidence and should be invoked very sparingly to bar its admission." *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1502 (1985). *Candy Craft* does not stand for some supposed general rule that evidence discovery misconduct is to be regularly excluded from evidence. Even if the matter of its admissibility in this case were not controlled (as in fact it is) by Federal Rule of Evidence 302, Rule 403 certainly should not be applied to bar extraordinarily probative evidence in the present case, of the great, improper and deceptive care taken by Defendants to conceal the evidence of their relationship and agreement with Mr. Harrell and the fraudulent character of their purported sale to him.

With regard to fraud, the Court has ruled that there is sufficient evidence that Defendants fraudulently concealed material information from Plaintiffs. Summary Judgment Order, Docket Item 118, pp. 65-66, but the Court denied a claim for common law fraud to Plaintiffs on the ground that there is no sufficient proof of damages proximately caused by the fraudulent concealment. However, this does not mean that Defendants' fraudulent concealment of information is not material to Count I of the complaint, based on breach of the covenant of good faith and fair dealing. Indeed, the Court has ruled that the same course of conduct that encompassed the fraudulent concealment could also constitute a breach of that covenant. Accomplishing a scheme to prevent Plaintiffs from reaping the fruits of the contract (in the form of a 15% interest in the value of the shopping center) is within the central concerns of the covenant of good faith and fair dealing. The covenant of good faith and fair dealing includes an obligation

16

"not to take opportunistic advantage in anyway that could not have been contemplated at the time of drafting . . . " *Martin v. Hamilton State Bank,* 314 Ga.App. 334, 335 (2012), The covenant in particular requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Gaphi, Inc. v. Seal Industries, Inc.,* _____ Ga.App. _____, 789 S.E.2d 321, 327 (2016) (construing New York law, but there is no reason to suppose that the law of Georgia would differ).  This is exactly what Defendants have done herein:  they have taken opportunistic advantage of the circumstance of the failure of Guaranty Bank, in order to insure that Plaintiffs will not obtain the fruits of the sales contract by which Plaintiffs were to have 15% of the profits of sale of the shopping center.  Furthermore, that doing so by means of fraudulent misrepresentations or concealments violates the covenant of good faith and fair dealing should be intuitively obvious:  "The duty of good faith and fair dealing clearly encompasses a duty not to commit fraudulent misrepresentations."   *Tecnoclima, SPA v. The PJC Group of New York, Inc.,* 193 WL 13937628 (S.D.N.Y. 1993) (no pagination available) (Haight, J.)

       In the present case, the Court has found that Defendants did make relevant false representations in this matter, but it has found that Plaintiffs cannot bring a case of common law fraud because the false representations were not made to Plaintiffs and because Plaintiffs cannot show that the false representations directly caused Plaintiffs' loss. Summary Judgment Order, Docket Item 118, pp. 64-68.  As the Court noted, however, this conclusion is not inconsistent with the Plaintiffs' good faith and fair dealing claim:  "[t]he contractual injury . . . was caused by Defendants' alleged breach of the implied covenant of good faith--primarily, by concealing the Electrolux lease *from Compass Bank* and selling

the Property for an artificially low price." *Id.,* p. 69.   Whether the purported sale of the property to Mr. Harrell, their unacknowledged agent, was a fraudulent sale at a fraudulent price is still a major issue, indeed the major issue, in this case.   Defendants' efforts to conceal the facts concerning this transaction, consisting of a course of fraudulent misrepresentations and concealments during discovery in this case, are directly relevant.

Most simply put, efforts to conceal fraud are evidence of fraud.   What Defendants are contending is that their efforts to conceal the fraudulent nature of the sale to Harrell cannot be considered as evidence if these efforts occurred during the discovery process.   They cite no meaningful authority for this proposition.   There is no reason that fraudulent concealment of the facts committed during the discovery process should be treated any differently for evidence purposes than fraudulent concealment after the fact outside of the discovery process.   It is well established that when a party attempts, after a transaction attacked as fraudulent,  to conceal the facts pertaining to the transaction, this is evidence to establish the fraud.   "A person's intent to defraud may be inferred from the party's subsequent acts after a false representation is made."  37 Am.Jur.2d, "Fraud and Deceit", Section 489.   Also, "the use of great caution to produce an appearance of fairness is suggestive of an ulterior purpose and adds weight to other circumstances evidencing fraud", and "precautions taken to avoid discovery of the facts of a transaction . . . may, from their connection with surreptitious circumstances, be indicative of fraud." *Id.,* Section 484.

Defendants cite *Wright v. Southland Corp.,* 187 F.3d 1287, 304 n. 20 (11th Cir. 1999) for the proposition that "evidence of post-litigation discovery disputes is in a category that is "irrelevant to the question of liability".   The Eleventh Circuit said no such

thing.  The case concerned alleged discriminatory firing of an employee.  The cited footnote stated that evidence of a discriminatory intent on the part of a prior superior of the employee, who was not involved in the decision to fire the employee, had no probative value.  The case had nothing to do with a claim of fraudulent conduct nor did it relate in any way to "discovery disputes".  Even more mystifying is Defendants' citation to this Court's opinion  in *Sackman v. Balfour Beatty Communities, LLC,* 2014 WL 4415938, *26, wherein this Court concluded that the opinion of an expert witness addressed matters "within the ken of the average person" and therefore lacked the "indicia of relevance" required for admissibility.  This has nothing to do with whether a defendant's efforts to conceal his fraudulent actions, through bad faith concealment of evidence in discovery, is relevant to whether he did in fact act with fraudulent intent.

It is well established, indeed hornbook law, that actions taken to conceal the fraudulent nature of a transaction are themselves evidence of the fraudulent nature of the transaction.   "Fraudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith."  *BTL Com Ltd, Co. v. Vachon,* 278 Ga.App. 256, 261 (2006).  Such actions do not become immunized or forbidden to the jury just because they are made during discovery in a lawsuit.  On the contrary, the fact that Defendants were willing to lie, conceal and violate their elementary discovery obligations, in order to avoid  the coming to light of their relationship with the alleged "unrelated third party" who bought the property for Defendants themselves in a sham transaction, only heightens the tendency of these actions to establish the underlying fraud.

4. *The recent amendment of Rule 37(e) of the Federal Rules of Civil Procedure should have no effect on the Court's determination that an adverse inference instruction is appropriate.*

Although Defendants do not mention the Court's intended adverse inference instruction in their motion in limine, granting it would necessarily preclude such an instruction. In their pretrial memorandum as to the adverse inference instruction, Docket Item 249, Defendants contended, for the first time, that the amendment of Rule 37(e), Federal Rules of Civil Procedure that became effective December 1, 2015, vitiated the ability of the Court to give the adverse inference instruction. On the contrary, the amendment, which became effective December 1, 2015, has and should have no effect on this Court's ability to give an adverse inference instruction in this case or on the propriety of doing so. The purpose of this amendment was to reject cases which authorized the imposition of sanctions for merely negligent failure to produce electronically stored information (ESI). *See CAT3, LLC v. Black Lineage, Inc,* 164 F.Supp.3d at 495. Because ESI can be so voluminous and because it is often disposed of in a routine manner after a period of time, it was deemed that parties should have protection against such negligent failure. In keeping with these limited goals, the new Rule 37(e) applies only where ESI "is lost because a party failed to take reasonable steps to preserve it", as the text of the rule itself puts it. In the present case we are not dealing with ESI that has been lost because it was routinely deleted or for other negligent reasons. Instead, we are dealing with what the Court has already found to be a bad faith pattern of discovery misconduct. The nature and date of the materials concealed by Defendants shows without doubt that the concealment was intentional, in a deliberate attempt to subvert the discovery process. Rule 37(e) as

amended has no application to this situation.  This is so obvious from the text of the amendment as to require no further argument.  Where only negligent failure to preserve ESI evidence is at issue, the various restrictions of Rule 37(e) are appropriate, but not where intentional, bad faith, selective  concealment of highly probative evidence is concerned. *See  CAT3, LLC v. Black Lineage, Inc, supra,* at 495 (S.D.N.Y. 2016).  Defendants continue to question the Court's authority to give an adverse inference instruction under its inherent powers, but the two cases Defendants cite (Defendants' Pre-Trial Memorandum, Docket Item 249, p. 3) only relate to violation of court orders requiring production and are thus entirely inapposite in this context.  Their argument that somehow Rule 37(e) affects the Court's inherent power to impose sanctions for bad faith, intentional discovery misconduct has no support in the text of amended Rule 37(e),  but even if it did have textual support this argument  is well  answered  in *CAT3, LLC v. Black Lineage, Inc., supra,* 164 F.Supp.3d at 497-498 (S.D.N.Y. 2016). [6]

In addition, Defendants seem to argue on broader grounds, but without authority, that an adverse inference instruction is improper as to evidence that has not been irretrievably lost.  This, however, has never been the law.  See, *e.g.*, *Metrokane, Inc. v.*

---

[6] :  Note also from discussion in the *Black Lineage*  case that the amendment is to apply "insofar as just and practicable" to pending cases.  Plaintiffs have justifiably relied on the availability of the adverse inference since the Court announced in its Order of May 15, 2014 (the "Sanctions Order") that it would do so.  This includes the entire period of the additional discovery allowed by the Court as a partial sanction for Defendants' misconduct. Defendants did not respond properly to the Court's Sanctions Order, but when they did they never questioned the principle that  an adverse inference instruction would  be given.  See Docket Items 156 and 158.  After the amendment of Rule 37(e) became effective on December 15, 2016, more than eight months ago, Defendants made no effort to ask for reconsideration of the Sanctions Order and said nothing about the amendment until August 22, 2016.  It would not be just to "pull the rug out from under" Plaintiffs by applying the amendment retroactively.

*Built NY, Inc.,* 2008 WL 4185865 (S.D.N.Y. 2008), wherein the court authorized just such

an instruction, rejecting the argument that, since a crucial email that had been concealed

by the defendant was later discovered fortuitously by the opposing party, no such inference

was proper.   In pertinent facts the *Metrokane* case is strikingly similar to the case now

before this Court.   See *Id.* at *3 and *5.   See also *Lucky Brand Dungarees, Inc. v. Ally

Apparel Resources, LLC,* 2009 WL 72982 (S.D.N.Y. 2009); and *Karlsson v Ford Motor

Co.,* 140 Cal.App.4th 1202, 1224-1227 (2006).  As to Defendants' argument in this regard.

Plaintiffs can hardly improve on the observations of the author of "Electronic Discovery

Misconduct in Litigation:   Letting the Punishment Fit the Crime", 61 U. Miami L. Rev.

289, 325 (2007):

> The proper focus is on whether the misconduct is intentional,
> not whether the harm is irreparable.  Otherwise, the system
> would become self-defeating - begging one to ask, how
> much fraud and deceit will a court tolerate?  Without severe
> sanctions, litigants would continue to commit infractions so
> long as their financial risk-reward calculations demonstrated
> that the consequences of the infractions were less onerous
> than compliance or obedience.   One must consider whether
> the discovery violation was the product of a calculated risk-
> reward decision since it is undesirable for litigants to apply
> game theory with respect to making discovery decisions.

Plaintiffs note that, although they have proposed only a permissive adverse

inference instruction, there is authority that where (as here) Defendants' spoliation has been

"substantial, intentional, in bad faith, and occurred during active litigation", it would be

proper to make it irrefutable.   *Barrette Outdoor Living, Inc. v. Michigan Resin

Representatives,* 2013 WL3983230 (E.D. Mich. 2013),  *2.

In the context of an adverse inference instruction, it is difficult to understand

Defendants' remark that "Plaintiffs insisted on undertaking a vast, disruptive and expensive

fishing expedition that came up empty."  Docket Item 249, p. 4.  This "expedition" (the forensic examination of Defendants' computers which the Court authorized as a sanction for their discovery misconduct)  in fact came up with an email exchange, which had obviously been intentionally "cleansed" from most of Defendants' computers, but fortuitously not from that of Defendant Gaultney, which was kept at another location.  In this exchange between Defendant Timberlake and Defendants' accountant, but copied to all Defendants, Defendants affirmatively admitted to and described the very scheme with which Plaintiffs charge them, and which they have for so long completely denied.  This is hardly "nothing".

### 2.  evidence of post short sale activities

Every step of Defendants' argument as to this is unjustified.  First, Defendants provide a recitation of "facts" which are sharply controverted.  They say that "after the short sale . . . Mr. Harrell decided he did not want to borrow any additional money and undertake the risk of continued development of the Shopping Center."  However, the evidence, including pre-eminently the evidence Defendants intentionally attempted to conceal, strongly suggests that in fact Mr. Harrell acted as a straw man from the beginning of his involvement with National Hills Shopping Center, not as an independent actor as Defendants argue.

Next, Defendants refer to the "extraordinary assumption" of the Atlantic Capital appraisal, that "the contingencies for the Electrolux lease would be met".  They fail to note that an "extraordinary assumption", in appraisal parlance, does not mean something out of the ordinary, but merely something of which the appraiser cannot be certain or which he has no direct knowledge.  See discussion in Deposition of Mancini, Docket Item 74, pp.

38-39.  It should be noted that, based on Mr. Mancini's testimony,  the assumption that the Electrolux lease would go into effect was necessarily based on information supplied by Defendant Swope.  *Id.,* pp. 6-8, 10-11.

Defendants are entirely incorrect when they next say that "none of these transactions and occurrences after the forced short sale have any bearing whatsoever on the amount that was realized from the short sale."  Again, Defendants' argument requires the assumption that the "short sale" was in fact a legitimate third party sale, when voluminous evidence, suppressed by Defendants, shows that this was not the case.  Contrary to Defendants' assertion, the evidence does show "that for some reason the forced sale should have generated enough proceeds to create a profit and that some Defendant was responsible [for its failure to do so]".  This matter was addressed by this Court in depth in its Summary Judgment Order.

3.  evidence of alleged representations or omissions by Defendants with Compass Bank prior to the settlement agreement between Defendants and Compass Bank

Defendants' argument here is based solely on the supposed effect of the merger clause in the settlement agreement between Defendants and Compass Bank.  This merger clause is a matter of contract between Defendants and Compass Bank.  It can have no effect on Plaintiffs' rights to present evidence in this lawsuit.  Since Defendants do not base their argument on anything other than the merger clause, Plaintiffs do not here dilate on the obvious relevance of the material Defendants seek to exclude.

### 4. evidence that any individual Defendant had a contract or contract obligations with Plaintiffs

Plaintiffs have not claimed that individual Defendants had a contract with Plaintiffs. Defendants as the persons in control of National Hills Exchange, LLC, had an obligation to see to it that in its dealings with Plaintiffs, National Hills Exchange, LLC observed good faith and fair dealing.   Plaintiffs do not understand why this Court's Summary Judgment Order did not dismiss the individual Defendants as parties (since it erroneously dismissed Plaintiffs' Count Four), but Defendants made no objection to this omission and have conducted this case at all times, even after the Summary Judgment Order, as defendants. Of course, now that the Court has re-instated Count IV of the complaint, the individual Defendants are proper parties defendant.  This is true regardless of the extent of relief to which Plaintiffs may be entitled to under Count IV.   All relief sought in Count IV is against the individual Defendants.  Indeed, as the Court noted in re-instating Count IV, one ground for relief against the individual Defendants would be based on the fact that National Hills Exchange, LLC, the only signatory to the Agreement for Purchase and Sale which forms the basis for Count I of the complaint, cannot respond in damages.  The other grounds for equitable relief against Defendants on Count IV are, as discussed in Plaintiffs' Item 18 Memorandum, Docket Item 250, section 3:  Defendants' breach of their fiduciary duties and Defendants' unjust enrichment.

### 5. evidence supporting a claim by Plaintiffs that they are entitled to monetary damages

Defendants simply seek reconsideration of the Summary Judgment Order, wherein the Court found that there is adequate evidence from which a jury might conclude that

Plaintiffs have been damaged.  They repeat the argument, rejected by this Court in the Summary Judgment Order, that any award of damages based on what the shopping center would have sold for had there been a bona fide sale, rather than a sham sale by Defendants to themselves, would be speculative.  See Summary Judgment Order, Docket Item 118, pp. 54-57.  Since Defendants provide no new argument on this point, which the Court has already rejected. Plaintiffs deem it unnecessary to respond further.  However, in this section Defendants make  a notable concession, stating that "assuming there was a breach of contract, the appropriate remedy would be to place Plaintiffs in the position that their lost profits would represent as an ownership interest in the LLC that now owns the shopping center." Defendants Motion/Brief in Limine, p. 9.  Based  on  the  above,  Defendants apparently agree that, if damages are for some reason unascertainable because uncertain, Plaintiffs  would  be  entitled  to  an  equitable  remedy  consisting  of  a  share  of  the  new company which owns the shopping center.  Plaintiffs certainly do not disagree with that. However,  the  remainder  of  this  section  of  Defendants'  brief  seems  to  be  flawed. Defendants argue that, if the profit Plaintiffs should have made on a "short sale" was $150,000, then Plaintiffs should receive an interest in the new company worth only that much.  Yet the predicate for their argument is that it is impossible, because speculative, to arrive at the number of the profit which Plaintiffs should have made.   This makes no sense. Plaintiffs contend that, if for any reason they cannot ascertain their damages with precision (or, as the Court has already held, a damage remedy would be inadequate because of the insolvency of National Hills Exchange, LLC), then they would be entitled to a 15% equity ownership in the new company.  It is a venerable principle that where Defendants have made  ascertaining  damages  difficult  or  impossible   (as  here,  by  preventing  either  a

foreclosure sale or a bona fide short sale from occurring), Defendants should bear the burden of the uncertainty.  *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562 (1931):  "Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced."  This rule applies to contract as well as tort cases.  *Miller v. Allstate Insurance Co.,* 573 So.2d 24 (1990).   In such a case, Plaintiffs should receive a 15% interest, not some lesser interest.

6.  evidence or argument as to whether the buyer at the short sale was an unrelated third party

Again, this misses the whole point of Plaintiffs' case.  Mr. Harrell was not an unrelated third party, because in fact he was only an undisclosed agent, or "straw man", for Defendants.   This Court has previously found that there is evidence to support this conclusion.

7.  evidence of the year-later Marshall Vann appraisal

Defendants based their argument for exclusion of Mr. Vann's appraisal solely on their incorrect theory that there is nothing left for the jury to determine in this case except whether Defendants "caused the forced sale" and whether "any Defendant committed an act or omission that caused the forced sale price to be below the profit threshold of $14.2 - $16 million".   Since their theory is wrong, there is no merit to their argument.

8.  evidence of the post short sale appraisal by CB Richard Ellis

Again, in this section of their motion, Defendants simply seek reconsideration of the Summary Judgment Order, wherein the Court found that the CB Richard Ellis appraisal

can be evidence of the value of the shopping center at the time of Defendants' sale to themselves through their straw man, Mr. Harrell.  Defendants cite nothing new which requires a response.

   9.  evidence of attorney fees incurred by Plaintiffs and testimony of its proposed expert

   Defendants do not claim that attorneys' fees would not be available in the event that Plaintiffs prevail in this lawsuit.  They simply assert that these must be set by the Court, not a jury.  In order to eliminate  an argument that will distract from the presentation of the case,  Plaintiffs agree for the amount of attorneys' fees to be awarded to Plaintiffs to be determined by the Court in post trial evidentiary proceedings.

   10.  evidence of alleged negotiations or representations not contained in the BT&R and National Hills Exchange Purchase and Sale Agreement in 2007

   Defendants appear to contend only for the unexceptional proposition that an integrated contract is not to be varied by oral representations.  They do not fully specify what they are talking about, stating only that "certain representations were made to [Plaintiffs] that National Hills Exchange, LLC would make a profit" and then referring to "any other oral representations".   Defendants correctly state the law of Georgia when they say that "the parol evidence rule prohibits the consideration of evidence of a prior or contemporaneous oral *agreement to alter, vary or change the unambiguous terms* of a written contract" (emphasis supplied).  However, assuming that Defendants, when they speak of oral representations testified to by Mr. Raiford, are referring to his deposition testimony at pp. 42-44, none of this testimony violates the parol evidence rule or the merger clause in the contract.  Plaintiffs submit that they cannot understand what this portion of

Defendants' motion is intended to mean except in the context of specific evidence that Defendants seek to exclude.  Defendants are not entitled to a blanket order in limine directing Plaintiffs not to violate the parol evidence rule, in the absence of any reasonable concern that they may do so.

11.  evidence of any communications between a Defendant and Mike Brown

Mr. Brown, like Plaintiffs herein, was a minority owner of National Hills Exchange, LLC, who was "squeezed out" of the LLC by the same mechanism by which Defendants rid themselves of Plaintiffs as owners.  In a running series of emails between December of 2010 and April of 2011, Defendants consistently replied dishonestly to Mr. Brown's repeated requests for information.   In these emails, Defendants concealed the very existence of the Electrolux letter of intent and the Electrolux lease, just as they did from Plaintiffs.  Also in these emails, Defendants consistently told Mr. Brown that if he wanted to participate in a supposed  purchase of National Hills Shopping Center by the owners of National Hills Exchange, LLC,  Mr. Brown  would have to sign a note and guarantee the whole debt.  This is the same thing Defendants told Plaintiffs.  However, at the time Defendants were making these statements, Defendants already knew that the project of buying the shopping center in the names of the owners of National Hills Exchange, LLC, could not take place, because Compass Bank would not allow a "short sale" to the owners of National Hills Exchange, LLC and instead required that any "short sale" be to an unrelated third party.  The evidence is that in making his inquiries by email, Mr. Brown was acting both for himself and for Plaintiffs.  *See, e.g.,* Affidavit of Raiford, Docket Item 121-1,  paragraph 9.  It is notable that the great majority of the communications between Brown and Defendants were copied to Raiford.

The sole basis upon which Defendants seek to exclude these communications (obviously relevant to the issues) from evidence is that they have "no bearing on whether or not the forced sale was required, or the amount of money that was realized in the short sale".  Thus, their objection fails for the same reason that it fails as to other evidence discussed herein:  the "only issues" in this case are not simply whether Defendants caused the forced sale and how much was realized by that sale.  Defendants' pattern of concealing the very existence of the letter of intent to Electrolux, the subsequent Electrolux lease, the contract to sell to Harrell (and the proposed price) and the sale to Harrell itself are all illustrated by Defendants communications with Brown.

12.  evidence regarding any planning or statements of intent by Defendants to re-acquire the shopping center after the short sale

Defendants seek to exclude any evidence that would show that Mr. Harrell, the purported buyer of the shopping center in April of 2011, was in fact not a bona fide  buyer, but was acting only as an undisclosed agent for Defendants themselves.  Certainly they would wish to exclude this, since such damning evidence of just this plan has been uncovered, despite Defendants' best efforts to hide it in discovery.

Again, Defendants' sole basis for seeking this exclusion is their incorrect view that the only issues in this case are whether Defendants "caused the short sale" and whether "Defendants did anything to reduce the sales price at the short sale".  Even accepting the view that Compass Bank required Defendants either to suffer foreclosure of the property or to sell it in a "short sale", evidence that, instead of choosing one of these two options and seeking to find a bona fide buyer for the shopping center at a bona fide price, Defendants chose instead to sell it to themselves secretly, at a low price obtained by

30

fraudulent concealments, would obviously be relevant to this case.  If, as the evidence plentifully demonstrates, Defendants did not make a bona fide effort to sell the property, but instead frustrated any effort to obtain a fair price, so as to acquire the property themselves through their straw man, then this is directly relevant to the issues even as stated by Defendants.

This 5th day of October, 2016.

/s/ Charles C. Stebbins, III
CHARLES C. STEBBINS, III
Georgia Bar No. 677350
Email:  cstebbins@wsmclaw.com
Attorney for Plaintiff

OF COUNSEL:
WARLICK, STEBBINS, MURRAY & CHEW, LLP
Post Office Box 1495
Augusta, Georgia 30903-1495
(706) 722-7543

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day, I electronically filed my Application for Leave of Absence with the Clerk of Court using the CM/ECF System and have this day served all parties in this case with a copy in accordance with the directives from the Court by Notice of Electronic Filing ("NEF") which automatically generates an email notification as a result of electronic filing to the following attorneys of record:

David E. Hudson, Esq.
Attorney for Defendants
dhudson@hullbarrett.com


N. Shannon Gentry Lanier, Esq.
Attorney for Defendants
SLanier@hullbarrett.com

This the 5th day of October, 2016.

/s/ Mitchell B. Snyder
MITCHELL B. SNYDER
Georgia Bar No. 382138
Email:  msnyder@wsmclaw.com
Attorney for Plaintiff

OF COUNSEL:
WARLICK, STEBBINS, MURRAY & CHEW, LLP
Post Office Box 1495
Augusta, Georgia 30903-1495
(706) 722-7543